UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-21021-CIV-UNGARO

UNITED STATES OF AMERICA,

     Plaintiff,

v.

SUSAN BRAUN,

     *Pro se* Defendant.



FILED by _____ D.C.

AUG 2 2 2016

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

<u>DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND DEFAULT FINAL JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)</u>

*Pro se* Defendant Susan Braun ("Student Borrower") respectfully submits to the Honorable Court her reply to Plaintiff's Response in Opposition to Defendant's Motion to Set Aside Default and Default Final Judgment ("Response").

The Student Borrower acknowledges that she made an inadvertent mistake in not formally responding to the Complaint by the deadline and asks the Honorable Court's forgiveness.

She also asks the Honorable Court to please consider in its ruling Plaintiff's Fraud, Misrepresentation or Misconduct in setting aside the Default Judgment, as well as Fraud on the Court pursuant to Fed. R. Civ. P. 60(d) and the Doctrine of Clean Hands.

## INTRODUCTION

Instead of presenting a case with a true but albeit complex history, Plaintiff ("USA-ED") fabricated a simple narrative that omits the wrongdoings of itself and its contractors. USA-ED knowingly submitted false evidence and omitted material facts. The Student Borrower has steadfastly sought fairness in repaying the Debt.  However, USA-ED was less concerned with fairness than with the possible fallout from the wrongdoings.

## REPLY TO THE PLAINTIFF'S RESPONSE

## Admission By No Response

1. Plaintiff does not explain, refute or respond to the following acts of fraud, misrepresentation or misconduct pursuant to Fed. R. Civ. P. 60(b):

2. The Certificates of Indeptedness are a fiction.  (Exhibit A);

3. The validity of the Student Borrower's Statement of Purchased Account that proves that the Certificates of Indeptedness are a fiction. (Exhibit B);

4. USA-ED misrepresented acquiring / reimbursing USA Funds ("Guarantor") for the Debt in 1998;

5. USA-ED misrepresented that the Guarantor serviced the Debt from 1998 - 2008;

6. USA-ED misrepresented that the Guarantor assigned them the Debt in 1998;

7. USA-ED misrepresented receiving that the Guarantor assigned title in 2008;

8. USA-ED has not shown any proof of purchase;

9. The Student Borrower never received a 1998 default notice;

10. USA-ED omitted criminal acts associated with the Debt committed by its contractors including the Guarantor that may meet the standard of a violation of the RICO Act;

11. USA-ED rescinded both a promise to discharge the Debt as well as rescinded a promise to not charge for interest during the forgery investigation.  Wrongly added interest fees could amount to about $30,000.  USA-ED writes in a 2008 letter, "As of April 22, 2008 the interest that has accrued on this account from May 10, 2002 through April 16, 2008 has been forgiven."  (Exhibit C);

12. The Guarantor may have reimbursed USA-ED for selling it a fraudulent loan in 2003.

## Due Process / Exhaustion of Administrative Remedies

13. The Student Borrower has informed USA-ED on numerous occasions that the Loan
    Discharge Application:  False Certification (Unauthorized Signature / Unauthorized
    Payment) is for loan origination and does not apply to the Student Borrower's situation
    yet USA-ED continues to submit;

14. Loan Discharge Application definitions:  "Unauthorized signature means that the school,
    without the borrower's authorization, signed the borrower's name on a loan application
    or promissory note."  "Unauthorized payment means that the school, without the
    borrower's authorization, endorsed the borrower's loan check… and did not give the
    loan proceeds to the borrower or … to the school.  (Exhibit D.)

## Timely Manner / Ripeness

15. **First Contact**:  Excerpted from a 2015 letter from the Student Borrower to Attorney
    Marquez: "[Y]ou gave me the impression that you were contacting me on behalf of the
    Department of Education.  I told you that I was happy that I finally had a person to speak
    with rather than writing countless letters to a U.S. Department of Education post office
    …  I very much would like to resolve this issue, yet I would like to work directly with
    the Department of Education…"[1] (Exhibit E);

16. **Settlement Negotiation:**  Upon receiving the Complaint in 2016, Mr. Robert Bernstein
    volunteered his legal services to negotiate a settlement but was thwarted by USA-ED.
    He writes, "to my surprise, Ms. Margolis refused without explanation to provide any
    accounting whatsoever of the indeptedness. She insisted that I accept without an
    accounting the Department of Education's Certificates of Indeptedness," adding, "While
    we were negotiating, Ms. Marquez filed a motion for entry of default on the day
    immediately after the answer was due.  I was traveling at the time, because of a family

---

[1] Plaintiff's counsel says that the Student Borrower spoke with an employee in her office.

emergency, and was surprised that government's counsel would be proceeding so aggressively." (Exhibit F);

17. **After the Default:** The Student Borrower didn't address her activities after the Default in the Motion to Set Aside the Default Judgment because she thought an explanation only up to the Default was correct.  USA-ED acknowledges that the Student Borrower keeps in consistent contact, "The Defendant sent seven (7) emails to the undersigned counsel between June 10, 2016 and June 24, 2016," [D.E. 33, § 3] during which time **USA-ED numerously asked the Student Borrower to produce documents regarding the consolidation fraud and other related matters.**  USA-ED knows that the Student Borrower cancelled a planned business opportunity, her first attempt at entrepreneurship, to dedicate herself to the Lawsuit.  (Exhibit G.)  The Student Borrower has no legal training and her motion-writing process is rudimentary and <u>extremely</u> time consuming.

18. **Extension of Time**:  "The extension of time is not only for me to obtain counsel but also for you to help me obtain an accounting."  (Exhibit H.)

19. **Pro Bono Attorney**:  "Wow, this is some assignment," a prospective Miami-based volunteer attorney wrote, "…I regrettably am not equipped to adequately represent Ms. Braun…  A default must be vacated, substantive issues involving potentially fraudulent documents … There may even be a counterclaim for RICO violations – all of which I don't feel competent to handle."  (No Exhibit attached as a courtesy.)

## ARGUMENT AND LEGAL BASIS

The Honorable Court has the power to set aside the Default Judgment pursuant to Fed. R. Civ. R. 60(b).

## Excusable Neglect

> As to what qualifies as "excusable," according to the Supreme Court, the ruling requires a fair and equitable determination,"... "taking account of all relevant circumstances surrounding the party's omission." "These circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S., 395 (1993).

The Student Borrower has been waiting for this opportunity for fairness for about twenty (20) years and the hardship to not proceed would be palpable.

USA-ED does not contest, albeit for argument's sake, Excusable Neglect and does not deny that the Student Borrower acted in good faith.  It does contest "reasonable delay."

> Fed. R. Civ. P. 60(c) Timing and Effect of the Motion. (1) *Timing*. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

 The Court's Denial of the Student Borrower's Motion to Deny Entry of the Default [sic] impressed upon her to put forth a lot more effort when the Court gave her the opportunity to seek relief.  This effort took (and takes) practically a round-the-clock effort as the Student Borrower is not just preparing this case but learning how to prepare this case.

The filing of the Motion to Set Aside the Default Judgment took just over 60 days, which is well within the Rule's one year limit and reasonable considering the complexity of the case and this being the first time that the Student Borrower has represented herself.

By its own exhibits in D.E. 33, Exhibit B, USA-ED concedes the Student's Borrower's intense focus on the Lawsuit in disclosing the her correspondence since the Default

## Fraud, Misrepresentation, Or Misconduct By An Opposing Party

Federal Rule of Civil Procedure 60(b)(3), Relief from a Judgment or Order, because the Default and Default Judgment were so Ordered due to fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

USA-ED committed varied acts of fraud, misrepresentation, and misconduct.

Fraud... is the intentional misstatement or omission of a material fact made with knowledge of its falsity or in reckless disregard for whether it is true or false. E.g., *SEC v. Infinity Group Co.*, 212 F.3d 180, 191-92 (3d Cir. 2000), cert. denied, 532 U.S. 905 (2001)

USA-ED egregiously misstated and omitted material fact in the Certificates of Indeptedness. This wasn't an an honest mistake or an oversight; This was a carefully crafted plan created to withhold the truth of criminal acts committed by USA-ED's contractors such as the Guarantor and Sallie Mae. These criminal acts of false claims and fraud committed by the contractors were perpetuated more towards USA-ED itself than the Student Borrower as it's reasonable to assume that what happened to the Student Borrower isn't an isolated incident.

31 U.S. Code § 3729 - FALSE CLAIMS - (a) Liability for Certain Acts.—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government,...

18 U.S. Code, Chapter 6 - Racketeer Influenced and Corrupt Organizations ("RICO") -

A properly stated RICO claim in the Eighth Circuit must allege the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

To recover under §1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Numours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

A recent case that went to the Supreme Court in May 2016, *Bible v. United Student Aid Funds*, deemed that USA Funds the Guarantor, Sallie Mae, and third party debt collection agency could be considered an enterprise for the purpose of RICO. This triad of contractors are the same as involved in the Student Borrower's case, *Bible v. United Student Aid Funds, Inc.*, 799 F. 3d 633 (Court of Appeals, 7th Circuit 2015)

> "*Bible...* alleges a number of facts permitting the reasonable inference that ... USA Funds, GRC, and Sallie Mae work as a single enterprise. *Id.*

> The Seventh Circuit also concluded that the RICO claim failed because Bible's amended complaint "has not shown participation in a scheme to defraud; commission of an act with intent to defraud; or the use of mails or interstate wires in furtherance of a fraudulent scheme." *Bible v. United Student Aid Funds, Inc.*, No. 1:13-CV- 00575-TWP-TAB, 2014 WL 1048807, at *10 (S.D. Ind. Mar. 14, 2014).

Although the Student Borrower professes no great legal insight, her understanding of RICO vis-a-vis *Bible v. USA Funds* is that the elements that *Bible* lacks to meet the RICO standard, the Student Borrower's Debt meets. There was a scheme to defraud, intent, a pattern, and the activity took place between Indiana and Pennsylvania via fax.

All of the above is to show why USA-ED: (1) would falsify its Certificates of Indeptedness; (2) take years to decide what to do such as going back-and-forth on issues such as loan "forgiveness;" (3) adhere to the false narrative of the Certificates by seemingly not having any of the Student Borrower's records prior to the fictitious 2008 assignment from USA Funds, (when should be hundreds of documents in the file); (4) not have records of the Accounting and Verification of the Debt; and (5) build upon the deceit by misleading the Court and trying to influence the judicial proceedings.

Withholding essential facts, such as an accounting, prevented the efforts of volunteer Attorney Bernstein from negotiating a settlement.

> "The court ... noted that once such fraud has been proved, "the judgment may be set aside upon the movant's showing that the fraud 'substantially interfered with the movant's ability fully and fairly to prepare for, and proceed at, trial.'" *Tiller v. Baghdady*, 294 F.3d 277, 280 (1st Cir. 2002).

Both intrinsic and extrinsic fraud were committed.

## Meritorious Defense

> In assessing a defendant's meritorious defense, "the likelihood of success is not the measure. [Defendant's] allegations are meritorious if they contain even a hint of suggestion, which, if proven at trial, would constitute a complete defense." *Sobkowski v. Wyeth*. 2004 U.S. Dist. LEXIS 28726, 2004 WL 3569703 at *3.

USA-ED does not contest that the Student Borrower has a Meritorious Defense aside from incorrectly referencing the consolidation loan fraud as not applicable to Fed. R. Civ. P. 60(b)(3). The Student Borrower references acts of fraud refer to fraud, misrepresentation, or misconduct by USA-ED itself as grounds to set aside the Default Judgment pursuant to 60(b)(3) and not wrongdoings by its contractors.

As with the incorrect referencing of fraud, USA-ED incorrectly references pre and post judgment interest rather than what could be $30,000 of wrongly added interest.

USA-ED may claim that the Student Borrower contradicts herself in each and every motion, but hollow words will not make what's true false and what's false true. This slight of hand may, however, mislead the Court and in the process tarnish the integrity of the judicial proceedings.

## Due Process

> Boyd v. U.S., 116 U.S. 616 (1886): "The court is to protect against any encroachment of Constitutionally secured liberties."

USA-ED has presented to the Court in numerous motions the Loan Discharge Application as proof that the Student Borrower did not exhaust her administrative remedies and is therefore not entitled to judicial review.  It cites two cases:  *Haddad v. Dominican University* and *Moore v. East Cleveland.*

USA-ED writes in each motion, "The United States Supreme Court describes the necessity of completing the administrative process before seeking judicial review."

> "By requiring exhaustion of administrative processes the courts are assured of reviewing only final agency decision arrived at after considered judgement." *Moore v. East Cleveland*, 431 U.S. 494, 525 (1977).

"Under 34 C.F.R. Section 682.402(e)(7)(iii)(B)(2),

> "[i}f the agency denies the request for discharge, a borrower may appeal directly to the secretary."  *Haddad v. Dominican University*, No. 06 C 0506, 2007 WL 8098685, at *3 (N.D. Ill. Mar. 15, 2007)

"As the Defendant has failed to exhaust her administrative remedies, she should not be permitted to raise this issue before the Court."

*Moore v. East Cleveland* is about due process in USA-ED's citing and *Haddad v. Dominican University* is about compliance. Following USA-ED's reasoning, the Student Borrower did not complete the Loan Discharge Application thereby not exhausting her administrative remedies and is therefore not entitled to judicial review.

However, the Loan Discharge Application has nothing to do with the Student Borrower's situation as it is for loan origination where the borrower did not receive the funds.

Therefore, non-compliance does not exist and, according to USA-ED's interpretation of *Moore v. East Cleveland,* is entitled to the due process of judicial review.

Essentially, by twisting the facts and misleading the Court, USA-ED attempts to deny the Student Borrower from her Constitution right to the due process clause of the Fourteenth Amendment. Please see *Moore*, 431 U.S. at 499 (plurality opinion) (quoting *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639-40 (1974).

## Fraud On The Court And Unclean Hands

> This standard recognizes that fraud upon the court, unlike perjury, need not be based on affirmative misstatements, but may be based on nondisclosures, and need not be based on proof of subjective knowledge of falsity, but may be founded on a showing of willful blindness or reckless disregard for the truth. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

USA-ED did not disclose a decade of truth from 1998 - 2008 and instead fabricated a whole new rendition of the facts to fit their narrative.

> Fraud on the court involves willful conduct that is deceitful and obstructionist, which injects misrepresentations and false information into the judicial process 'so serious that it undermines ... the integrity of the proceeding'. (Baba-Ali v. State, 19 NY3d 627, 634 [2012] [citation and quotations omitted]

USA-ED fabricated the Certificates of Indeptedness to fun-house mirror the facts so the eyes of the court would see a distortion.

> The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989).

The distortion of the truth may have influenced the judicial proceedings.

Ordered on June 2, 2016, on the Student Borrower's *pro se* Motion for Referral to Volunteer Attorney Program, D.E. 20. "THE COURT has considered the pertinent portions of the record and being otherwise fully advised in the premises hereby ORDERS AND ADJUDGES that the Motion, D.E. 20, is DENIED."

Sample Motion from US District Court - Southern District of Florida for Referral to Volunteer Attorney Program reads: "[T]he Court further noted that the appointment of counsel is warranted only where there are **exceptional circumstances, such as where the legal and factual issues are so complicated as to require the assistance of a lawyer.**" (Emphasis mine.) *Dean v. Barber,* 951 F.2d 1210 (11th Cir. 1992)

The fictitious Certificates of Indeptedness gave the false impression to the Court that the circumstances were simple, common, and a straight-line narrative.  This inaccuracy perhaps induced the Court to rule against the Student Borrower.  Working around the clock on this lawsuit has taken a toll on the Student Borrower's already compromised health.

This improper influencing of judicial proceedings may have happened in the Court's Denial of the Student Borrower's Motion Requesting an Extension of Time.

Ordered on June 15, 2016, "The Court has reviewed pertinent portionsof the record and is otherwise fully advised in the premises.  Defendant requests a 21-day extension of time... 'to seek a pro bono attorney to reverse the default judgment' entered in this case. D.E. 25 As grounds for her Motion, Defendant states that the case involves fraudulent student loans, and she needs additional time to obtain counsel.  *Id.* Plaintiff opposes Defendant's Motion, arguing that Defendant has failed to exhaust her administrative remedies by

returning the Loan Discharge Application:  False Certification (Unauthorized Signature / Unauthorized Payment) form sent to her on December 13, 2014.  D.E. 26."

"The Court will not grant Defenant the extension requested.  Defenant has been on notice of Plaintiff's potential claims since 2014…"

("The clean hands doctrine is not applied for the protection of the parties nor as a punishment to the wrongdoer; rather, the doctrine is intended to protect the courts from having to endorse or reward inequitable conduct.")

Not one but two versions of the Loan Discharge Application were included as exhibits.

The Plaintiff's council represents the Plaintiff in this case, the USA, not merely as a single case client but a practice-making career client as acknowledged in the foregoing, "Plaintiff's attorney, the undersigned counsel, has over ten years of experience collecting government student loans and has been representing the Plaintiff in these types of cases since joining the undersigned law firm in 2004," (Plaintiff's DE 21 Exhibit 1, §7).

The Student Borrower understands and empathizes that while Plaintiff's attorney may have been merely following the directives of its client, **repeated acts of fraud on the court were done nonetheless.**

## CONCLUSION

"To err is human; To forgive, divine," Alexander Pope.  USA-ED made mistakes but makes no admission.  USA Department of Education is not an abstract notion in a political philosophy class.  It's a workplace populated with good everyday people.  But some of these good everyday people passed the buck on doing the right thing.  Maybe it wasn't convenient?  Maybe they would've had to work past five?  Maybe, who knows?

Today, student borrowers owe billions of dollars in student loans and many are sentenced to a life of indentured servitude to their debt.  Yet, we are not a nation of derelicts.

In the past few years alone, there have been several multi-million dollar lawsuits against the very contractors involved in this lawsuit.

The Student Borrower humbly asks the Honorable Court of Judge Ungaro to please grant this motion to set aside the default and default judgment and to grant any and all relief that it deems just.  Granting relief to the Student Borrower will not cure the ills of all student borrowers, but it will be a start in righting the wrong done to one.

Respectfully submitted by,

Susan Karrie Braun,

August 22, 2016

## DECLARATIONS

I declare under penalty of perjury that I, Susan Karrie Braun, am the pro se Defendant in this lawsuit, and that no one helped me research or write this motion.  I declare that the foregoing is true, to the best of my knowledge and understanding.

SIGNATURE: *[signature]*                    DATED: *Aug 22, 2016*

PRINTED NAME:  SUSAN BRAUN

ADDRESS:        45 NW 44TH STREET

                MIAMI, FL  33127

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on June, 30, 2016 on all counsel or parties of record on the Service List below.

Signature:

Printed name: Susan Braun

SERVICE LIST:

The Honorable Judge Ursula Ungaro

United States District Court, Southern District of Florida

Attention: Intake for docketing

400 North Miami Avenue, Room 8N09

Miami, Florida 33128


Ms. Jennifer Margolis Marquez

Newman & Marquez, P.A.

1533 Sunset Drive, Suite 225

Coral, Gables, FL  33143-5700

Attorney for Plaintiff

# Exhibit
# A
(Certificates of Indeptedness)

**U. S. DEPARTMENT OF EDUCATION**
**SAN FRANCISCO, CALIFORNIA**

**CERTIFICATE OF INDEBTEDNESS #2 OF 2**

Susan K. Braun
█Northwest█ Street
Miami, FL 33█-2611
Account No. XXXXX7537

I certify that U.S. Department of Education records show that the BORROWER named above is indebted to the United States in the amount stated below plus additional interest from 07/21/14.

On or about 09/25/89, the BORROWER executed promissory note(s) to secure loan(s) of $7,500.00 from MERITOR. This loan was disbursed for $7,500.00 on 10/11/89 through 12/14/89 at a variable rate of interest to be established annually by the Department of Education. The loan obligation was guaranteed by United Student Aid Funds, Inc., and then reinsured by the Department of Education under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. 1071 et seq. (34 C.F.R. Part 682). The holder demanded payment according to the terms of the note, and credited $0.00 to the outstanding principal owed on the loan. The BORROWER defaulted on the obligation on 01/30/98, and the holder filed a claim on the loan guarantee.

Due to this default, the guaranty agency paid a claim in the amount of $10,726.12 to the holder. The guarantor was then reimbursed for that claim payment by the Department under its reinsurance agreement. Pursuant to 34 C.F.R. § 682.410(b)(4), once the guarantor pays on a default claim, the entire amount paid becomes due to the guarantor as principal. The guarantor attempted to collect this debt from the BORROWER. The guarantor was unable to collect the full amount due, and on 11/03/08, assigned its right and title to the loan to the Department.

Since assignment of the loan, the Department has credited a total of $1,037.67 in payments from all sources, including Treasury Department offsets, if any, to the balance. After application of these payments, the BORROWER now owes the United States the following:

| | |
|---|---|
| Principal: | $10,726.12 |
| Interest: | $8,937.31 |
| Total debt as of 07/21/14: | $19,663.43 |

Interest accrues on the principal shown here at the current rate of 3.28% and a daily rate of $0.96 through June 30, 2015, and thereafter at such rate as the Department establishes pursuant to section 427A of the Higher Education Act of 1965, as amended, 20 U.S.C. 1077a.

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct.

Executed on: _1-19-14_

Loan Analyst
Litigation Support Unit

# Exhibit B

Statement of Purchased Account 2003 USA Funds

# STATEMENT OF PURCHASED ACCOUNT

| Statement Date |
| --- |
| 05\05\03 |

| Account Identification | |
| --- | --- |
| Acct #: | Loans Requested |
| ~~███████~~ | ALL |

| Page Number |
| --- |
| 1 |

| Code Definition | * | Code |
| --- | --- | --- |
| IRS Federal Offset | | IO |
| State Offset | | SO |

BRAUN SUSAN K
4200 NE 1ST AVE
MIAMI, FL 33137

UNITED STUDENT AID FUNDS
P O BOX 6180
INDIANAPOLIS IN 46206-6180
(317) 849-6510

Please notify us at once of any payments not shown on this statement.

\* COLLECTION AGENCY LOCATION

| Transaction Date | | | Gross Payments | Collection Costs | Other Charges | Date Interest Paid Thru | | | Interest Paid | Charge to Principal | Principal Due | Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Month | Day | Year | | | | Month | Day | Year | | | | |
| 01/31/98 | | | BORROWER | DEFAULT AMOUNT | @ VARIABLE INTEREST | | | | | $10,726.12 | $10,726.12 | |
| 02/27/98 | | | BORROWER | DEFAULT AMOUNT | @ VARIABLE INTEREST | | | | | $7,670.01 | $18,396.13 | |
| 04/08/98 | | | $150.00 | $19.10- | | 03/03/98 | | | $130.90 | $0.00 | $18,396.13 | 3U |
| 05/13/98 | | | $150.00 | $29.99- | | 04/01/98 | | | $120.01- | $0.00 | $18,396.13 | 3U |
| 05/13/02 | | | $4,550.23 | $4,550.23- | | 05/13/02 | | | $0.00 | $0.00 | $0.00 | 6G |

FEDERAL DIRECT LOAN CONSOLIDATION TOTAL ADJUSTMENT AMOUNT $24,599.55
BORROWER MAY BE RESPONSIBLE FOR COLLECTION COSTS/OTHER CHARGES

| Principal Due | Other Unpaid Charges | Daily Interest Rate | Unpaid Accrued Interest | Collection Costs | Balance Due |
| --- | --- | --- | --- | --- | --- |
| 0.00 | 0.00 | 0.00000 | 0.00 | 0.00 | 0.00 |

| Principal Paid | Other Charges Paid | Interest Paid | | Collection Costs Paid | Total Paid |
| --- | --- | --- | --- | --- | --- |
| 18,396.13 | 0.00 | 6,454.33 | | 4,599.32 | 29,449.78 |

USA Funds Form 217E  6/02

# Exhibit C

Department of Education letter - $11,000+ interest forgiveness

*Borrower Services*
*800   848 - 0984  (f)*

*Name*
*ss*
*signatu*
*date*
*return f*
*Sallie Mae*

*7-10 days*

# Direct Loans
William D. Ford Federal Direct Loan Program

April 24, 2008

Susan K. Braun
45 NW 44th Street
Miami, FL 33127

Account #: ~~XXXXXXXXX~~

Dear Ms. Braun:

This letter is in regard to your concerns relating to the possibility that someone other than yourself signed your name to a Federal Direct Consolidation Loan Promissory Note. Since we did not receive a response from you to the letters dated February 2, 2008 and March 18, 2008, the United States Department of Education has decided to have your consolidation loan remain with Direct Loans.

As of April 22, 2008 the interest that has accrued on this account from May 10, 2002 through April 16, 2008 has been forgiven. The total amount forgiven during this time frame is $11,269.42. As of April 24, 2008, you are responsible for a Direct Loan debt totaling $29,184.27 ($29,146.13 – outstanding principal balance + $38.14 – outstanding accrued interest from April 17, 2008 through April 23, 2008).

If you have any questions, please contact our Borrower Services Department from 8:00 AM to 8:30 PM Eastern Time, Monday through Friday at 1-800-848-0979. Hearing-impaired individuals who have access to a TDD (Telecommunications Device for the Deaf) can call the Federal Information Relay Service (FIRS) at 1-800-848-0983.

Thank you for you patience and cooperation with this matter. .

**Direct Loan Servicing Center**
**Centralized Discharge Department**
**PO Box 5609**
**Greenville, TX 75403**

Sincerely,

Centralized Discharge Department
Direct Loan Servicing Center

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*
U.S. Department of Education

# Exhibit D

Loan Discharge Application and Email

 Gmail

# "Loan Discharge Application" form / Criminal Prosecution

**Susan Karie Braun** <susanbraun18@gmail.com>
To: jmarquez@newmanmarquezpa.com

Tue, Jun 21, 2016 at 2:40 PM

Ms. Marquez,

Good day.

The "Loan Discharge Application : False Certification" form that you included as an Exhibit in your Motion to Deny my Request for an Extension of Time and that the Judge referenced in her Order on Extension of Time that denied my request is for fraudulent loan <u>origination</u> and, if I had signed that form, would've opened me to criminal prosecution. I relayed this to you last year when your office first mailed the form to me.

As I have repeatedly expressed over many years, including several times to you in the past year, the forgery took place at Sallie Mae on consolidation loans and collection fees were added that shouldn't have been, among other issues that have most unfairly treated me as a borrower. The Ombudsman Group at the Department of Education was trying to help but was blocked by this lawsuit. Hence, they are filing a complaint.

As an expert in this field, I would think you would be aware of some of these issues. As a courtesy and in good faith, I recently emailed to you solid proof to my claim to both the forgery and the fraudulently added collection fees. In response to my attempt at good faith, you filed your opposition with the "Loan Discharge Application."

Respectfully,
Susan Braun



# LOAN DISCHARGE APPLICATION: FALSE CERTIFICATION (UNAUTHORIZED SIGNATURE / UNAUTHORIZED PAYMENT)

**Federal Family Education Loan Program / William D. Ford Federal Direct Loan Program**

OMB No. 1845-0015
Form Approved
Exp. Date 08/31/2008

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying documents will be subject to penalties which may include fines, imprisonment or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER IDENTIFICATION

Please enter or correct the following information:

SSN |___|___|___|-|___|___|-|___|___|___|___|

Name _____

Address _____

City, State, Zip _____

Telephone - Home ( ) _____

Telephone - Other ( ) _____

E-mail (optional) _____

## SECTION 2: STUDENT INFORMATION

*Before completing this section, carefully read the entire form, including the instructions, definitions, and terms and conditions in Sections 4, 5, and 6 on this form. If you are a student borrower applying for loan discharge, begin with Item 3. If you are a parent borrower applying for a PLUS loan discharge, begin with Item 1.*

1. Student's name (last, first, middle initial): _____

2. Student's SSN: |___|___|___|-|___|___|-|___|___|___|___|

3. School's name: _____

4. School's address (street, city, state, zip): _____

5. Dates of attendance at the school:  From |___|___|-|___|___|-|___|___|___|___|  To |___|___|-|___|___|-|___|___|___|___|

6. Did you sign the application, promissory note, master promissory note (MPN), or combined application/promissory note for your loan(s)?  ☐ Yes  ☐ No
   If No, on which document(s) did someone else sign your name?  ☐ Application  ☐ Promissory note  ☐ MPN  ☐ Combined application/promissory note

7. Did you endorse each loan check or sign your name on each electronic funds transfer authorization or master check authorization?

   ☐ Yes  ☐ No  ☐ Does Not Apply

   If No, on which document(s) did someone else sign your name?  ☐ Loan check  ☐ Electronic funds transfer authorization  ☐ Master check authorization

   If No, did you (or, for PLUS borrowers, the student) ever receive any money from the school, or did the school ever reduce the amount of money that you (or, for PLUS borrowers, the student) owed to the school?  ☐ Yes  ☐ No  ☐ Don't Know   If Yes, explain (give dates, amounts, and circumstances): _____

   If No or Don't Know, explain how you (or, for PLUS borrowers, the student) paid the tuition and fees owed to the school: _____

8. If you answered No to Item 6 or Item 7, do you know who signed your name on the document(s) checked in Item 6 or Item 7?
   ☐ Yes  ☐ No   If Yes, identify the person who signed your name on the document(s).

   School employee or representative (name and position): _____

   Other person (name): _____

   Provide any other information about the circumstances under which another person signed your name: _____

   **IMPORTANT:** If you did not sign your name on one of the documents listed in Item 6 or Item 7, you must attach documents containing four other samples of your signature in addition to the signature on this application. At least two of these samples must clearly show that your signatures were written within one year before or after the date of the document on which someone else signed your name. Examples of documents that would include both a signature sample and the date that the signature was written include—but are not limited to—cancelled checks, tax returns, and driver's licenses. If you do not provide these signature samples, you cannot be considered for a loan discharge.

9. Did the holder of your loan receive any money back (a refund) from the school on your behalf?  ☐ Yes  ☐ No  ☐ Don't Know
   If Yes, give the amount and explain why the money was refunded: _____

10. Did you (or, for PLUS borrowers, the student) make any monetary claim with, or receive any payment from, the school or any third party (see definition in Section 5) in connection with enrollment or attendance at the school?  ☐ Yes  ☐ No  ☐ Don't Know   If Yes, please provide the following information:

   a)  Name/address/telephone number of the party with whom the claim was made or from whom payment was received: _____

   b)  Amount/status of claim: _____   c)  Amount of payment received:  $ _____
                                                     (Write "none" if no payment was received.)

## SECTION 3: BORROWER CERTIFICATION

My signature below certifies that I have read and agree to the terms and conditions that apply to this loan discharge, as specified in Section 6 on the following page. Under penalty of perjury, I certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief.

Borrower's Signature: _____   Date: _____

**SECTION 4: INSTRUCTIONS FOR COMPLETING THE APPLICATION**

Type or print using dark ink. For all dates, give month, day (if known), and year. Show dates as MM-DD-YYYY (for example, "January 31, 2006" = "01-31-2006"). If you need more space to answer any of the items, continue on separate sheets of paper and attach them to this form. Indicate the number of the item(s) you are answering and include your name and social security number (SSN) on all attached pages.
*Sign and date the form. Then, send the completed form and any attachments to the address in Section 8.*

**SECTION 5: DEFINITIONS**

- The **Federal Family Education Loan (FFEL) Program** includes Federal Stafford Loans (both subsidized and unsubsidized), Federal Supplemental Loans for Students (SLS), Federal PLUS Loans, and Federal Consolidation Loans.
- The **William D. Ford Federal Direct Loan (Direct Loan) Program** includes Federal Direct Stafford/Ford Loans (Direct Subsidized Loans), Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans), Federal Direct PLUS Loans (Direct PLUS Loans), and Federal Direct Consolidation Loans (Direct Consolidation Loans).
- The **holder** of a borrower's FFEL Program loan(s) may be a lender, a guaranty agency, or the U.S. Department of Education (the Department). The holder of a borrower's Direct Loan Program loan(s) is the Department.
- **Unauthorized signature** means that the school, without the borrower's authorization, signed the borrower's name on a loan application or promissory note.
- **Unauthorized payment** means that the school, without the borrower's authorization, endorsed the borrower's loan check or signed the borrower's authorization for electronic funds transfer or master check, and did not give the loan proceeds to the borrower or apply the loan proceeds to charges owed by the student to the school.
- **Loan discharge** due to an unauthorized signature on a loan application or promissory note cancels the obligation of a borrower (and endorser, if applicable) to repay the remaining balance on a FFEL Program or Direct Loan Program loan, and qualifies the borrower for reimbursement of any amounts paid voluntarily or through forced collection on the loan. Discharge due to an unauthorized signature on a loan check, electronic funds transfer authorization, or master check authorization applies only to the amount of the unauthorized payment. For consolidation loans, only the loan amounts associated with the document listed in Section 2, Item 6 or Item 7, will be considered for discharge. The loan holder reports the discharge to all credit reporting agencies to which the holder previously reported the status of the loan.
- The **student** refers to the student for whom a parent borrower obtained a Federal PLUS Loan or Direct PLUS Loan.
- **Third party** refers to any entity that may provide reimbursement for a refund owed by the school, such as a tuition recovery program or performance bond.

**SECTION 6: TERMS AND CONDITIONS FOR LOAN DISCHARGE BASED ON FALSE CERTIFICATION (UNAUTHORIZED SIGNATURE/UNAUTHORIZED PAYMENT)**

- The school identified in Section 2 of this form received FFEL Program or Direct Loan Program loan funds on or after January 1, 1986 for me to attend (or, if I am a PLUS borrower, for the student to attend) the school. I am applying for a discharge of my FFEL Program or Direct Loan Program loan(s) because the loan application, promissory note, master promissory note, combined application/promissory note, loan disbursement check, electronic funds transfer authorization, or master check authorization were not authorized for the reasons stated in this application.
- I will provide, upon request, testimony, a sworn statement, or other documentation reasonably available to me that demonstrates to the satisfaction of the Department or its designee that I meet the qualifications for loan discharge based on unauthorized signature / unauthorized payment, or that supports any representation that I made on this form or on any accompanying documents.
- I agree to cooperate with the Department or its designee regarding any enforcement actions related to my request for loan discharge.
- I understand that my request for loan discharge may be denied, or my discharge may be revoked, if I fail to provide testimony, a sworn statement, or documentation upon request, or if I provide testimony, a sworn statement, or documentation that does not support the material representations I have made on this form or on any accompanying documents.
- I further understand that if my loan(s) is discharged based on any false, fictitious, or fraudulent statements that I knowingly made on this form or on any accompanying documents, I may be subject to civil and criminal penalties under applicable federal law.
- I hereby assign and transfer to the Department any right to a refund on the discharged loan(s) that I may have from the school identified in Section 2 of this form and/or any owners, affiliates, or assigns of the school, and from any third party that may pay claims for a refund because of the actions of the school, up to the amounts discharged by the Department on my loan(s).

**SECTION 7: IMPORTANT NOTICES**

**Privacy Act Disclosure Notice:** The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authorities for collecting the requested information from and about you are 428(b)(2)(A) et seq. and 451 et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq. and 20 U.S.C. 1087a et seq.) and the authority for collecting and using your Social Security Number (SSN) is 484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan (FFEL) Program or the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the FFEL Program and/or Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) becomes delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to financial and educational institutions, to guaranty agencies, and to contractors in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions efficiently to submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Paperwork Reduction Notice:** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0015. The time required to complete this information collection is estimated to average 0.5 hours (30 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this application, please write to: U.S. Department of Education, Washington, DC 20202-4651.
*If you have questions regarding the status of your individual submission of this application, contact your loan holder (see Section 8).*

**SECTION 8: WHERE TO SEND THE COMPLETED LOAN DISCHARGE APPLICATION**

*Send the completed loan discharge application and any attachments to: (If no address is shown, return to your loan holder.)*          *If you need help completing this form, call:*

*Page 2 of 2*

# Exhibit E

Letter to Attorney Marquez

# Susan Braun

45 NW 44th Street
Miami, FL  33127

May 10, 2014

Continental Service Group, Inc.
200  CrossKeys Office Park
Fairport, NY 14450

Re:  US Dept of Education
For:  Federal Student Loan
Client ID:  1000726846
Account:  4048355

Re:  Cease and desist letter to ConServe

To whom it may concern:

I have told several extremely nasty phone representatives that I believe the constant harassing is abusive
and in violation of the Fair Debt Collection Act.

Please return this debt to the U.S. Department of Education.  I have a long-standing dispute with them.

Respectfully,


Susan Braun

Susan Braun
45 NW 44th Street
Miami, FL  33127

March 11, 2015

Jennifer Margolis Marquez
~~████~~ Sunset Drive
Coral Gables, FL  33███
Suite 225

re:  CDCS# 2015A10338 and CDCS# 2015A10233

Dear Ms. Marquez,


This letter is in response to your letter,  dated March 4, 2015 and received March 11, 2015, advising me that failure to cooperate could lead to your firm filing a lawsuit against me on behalf of your client, the United States of America.

The last we spoke, Thursday, February 10, 2015, you said that you would telephone me the following day after researching payments made on my student loan and the forged signature that occurred at a Pennsylvania office of Sallie Mae.  Instead, I didn't receive a telephone call but instead copies of the original student loan agreements.

I have never denied that I had borrowed the money.

When you first telephoned me, you gave me the impression that you were contacting me on behalf of the Department of Education.  I told you that I was happy that I finally had a "person" to speak with rather than writing countless letters to a U.S. Department of Education post office in Texas and emails with varied and numerous customer service representatives without a direct contact.  Now, my understanding is that your law firm works on behalf of the U.S. Department of Justice to collect a debt and/or file a lawsuit against me.

I very much would like to resolve this issue, yet I would like to work directly with the Department of Education because when I tried to pay off these debts about sixteen years ago via a debt collection agency, it seems that the money paid was not properly applied.

Please know that all of my other student loan debts, from undergraduate and graduate schools, have been paid.

As I expressed to you during our first conversation, this has been a nightmare for a very, very long time.  The Department of Education acknowledged the forgery after their own forgery expert confirmed.  The Department of Education had told me that if the forgery was confirmed that the loan(s) would be discharged.  Instead, the loans have bounced to various collection agencies without me being able to communicate directly with the Department of Education.


Respectfully,


Susan Braun

# Exhibit F

Letter from volunteer Attorney Robert Bernstein

# EATON & VAN WINKLE LLP

3 PARK AVENUE, 16TH FLOOR
NEW YORK, NEW YORK 10016

ROBERT B. BERNSTEIN
PARTNER

TELEPHONE: (212) 779-9910
DIRECT DIAL: (646) 485-5334
EMAIL: RBERNSTEIN@EVW.COM

August 17, 2016

**VIA ELECTRONIC MAIL**
Susan Karrie Braun
N.W. 4th Street
Miami, Florida 33127

Re: USA v. Susan Karrie Braun

Dear Susan:

I am writing to confirm the efforts I undertook on your behalf in an effort to resolve the federal lawsuit brought against you in connection with your student loans.

First, let me state that I am an attorney admitted to practice in the State of New York, where I maintain my office. I am not admitted to practice in Florida,

Your brother Jeff, a past client, asked if I could nevertheless assist you in trying to get the dispute settled because he said you did not have funds to retain counsel of your own. I agreed to help, solely as a courtesy to your brother, by immediately contacting the lawyer representing the Department of Education, explaining that I was a lawyer based in New York who had been asked by a member of your family here in the New York area to see whether there was a basis for settlement. My objective was to assure the government's lawyer that you take your legal obligations seriously, that you did not have the financial resources to litigate, but that you would like to negotiate in good faith to see whether the government would agree to settlement terms that you could afford.

I then called the lawyer, Jennifer Marquez, by telephone, at her Miami office, explained the situation, and asked for a 60-day extension of time to respond to the complaint so that in the interim I could try to see whether we could find a way to settle. Ms. Marquez said she would only agree to a 20-day extension of time, but asked that you complete the financial disclosure form required of all parties seeking to settle with the Department of Education. I in turn asked for a formal accounting of the indebtedness so that I could be sure of the exact amounts borrowed, the interest thereon, and the extent to which any payments made were credited. To my surprise, Ms. Marquez refused without explanation to provide any accounting whatsoever of the indebtedness. She

August 17, 2016
Page 2

insisted that I accept without an accounting the Department of Education's Certificates of Indebtedness.

I nevertheless tried in good faith to get the matter settled anyway because, even without the formal accounting, I knew that you had limited funds to work with and it was my hope and expectation that Ms. Marquez would see that from the financial disclosure form and, as a matter of common sense, agree to terms by which you could resume making payments every month at an amount you could afford. Ms. Marquez, however, said she had limited discretion, could neither agree to monthly payments that you could afford, nor to the settlement amount offered.

While we were negotiating, Ms. Marquez filed a motion for entry of default on the day immediately after the answer was due. I was traveling at the time, because of a family emergency, and was surprised that government's counsel would be proceeding so aggressively when we were trying to work out a settlement.

I then contacted your brother, told him that if I had to file papers in Florida, I would have to be formally retained and, in addition, I would have to retain Florida counsel in order to be admitted pro hac vice for purposes of this case. Because it would have ultimately cost more to retain me than it would have to pay the judgment, and because you did not have the funds to do either, you said you would contact legal aid to represent you. I later learned that you have been representing yourself as you continue to seek volunteer legal assistance.

I am disappointed to hear that the government has still not provided the accounting you were seeking, but I am encouraged to hear that through your own efforts, you may uncovered evidence that the government's Certificates of Indebtedness are not accurate.

I firmly believe that the government needs to work in good faith with all student loan borrowers having financial difficulties to work out terms of repayment that they can afford. Indeed, it was my understanding that that is precisely the policy of the U.S. government today. I was therefore very surprised and disappointed to learn that the government seems more interested in using aggressive litigation tactics to bully debtors into submission rather trying in good faith to work out settlements on mutually agreeable terms.

Please feel free to share this letter. Please also advise anyone who receives it that I would be happy to answer any questions arising out of anything I said here.

Sincerely,

Robert B. Bernstein

RBB:lkn

# Exhibit
# G

Letter regarding Post Default re
Cancelled Business Opportunity



August 18, 2016

To the Honorable Court:

Ms. Susan Braun asked if I would write a letter on her behalf regarding her lawsuit. I am the General Manager of Golden Goal Park, a 200 acre sports park, where Susan had planned a fitness camp - wellness retreat this summer.

Since 2015, Ms. Braun had been diligently working on Bella Blast Fitness. The amount of invested time is displayed throughout the website:

## www.bellablastfitness.com.

In April 2016, Susan postponed Bella Blast Fitness after learning of the lawsuit opting instead to focus on resolving and settling the legal matter. In May 2016, Susan elected to cancel Bella Blast Fitness as she wished to dedicate her time solely to resolving the lawsuit. This cancellation was unfortunately quite a loss for Susan as she had an extremely favorable deal financially as well as a strong passion for the benefits of the fitness camp - wellness retreat for herself and other women.

Thank you for your review of this information. If you have any questions please contact me at mshearer@goldengoalpark.com.

Sincerely,

Mark Shearer
General Manager
Golden Goal Park

495 Goodman Road - Fort Ann - NY 12827

# Exhibit
# H

Email Extension
Time for Volunteer Attorney - Defendant
An Accounting of the Debt - Plaintiff

 Gmail

# Susan Braun / Case 16-21021-CV-UNGARO

**Susan Karie Braun** <susanbraun18@gmail.com>                                      Fri, Jun 10, 2016 at 2:58 PM
To: jmarquez@newmanmarquezpa.com

Dear Ms. Margolis-Marquez,

Thank you for taking the time to write your detailed letter that I received earlier this week.

I am still actively seeking a volunteer attorney. Yesterday, I had a most helpful conversation with an attorney and am hopeful that I will soon have representation. In the meantime, I will write a pro se motion requesting an extension of time.

The extension of time is not only for me to obtain counsel but also for you to help me obtain an accounting. You wrote in your letter that you've provided me with a "balance" but I've never requested that but rather have asked for an accounting. By an accounting, I mean documents showing where the interest and collection fees were added as I've been contesting this for about twenty years. To say this Kafkaesque process has been a nightmare and a hardship is an understatement.

In good faith, I'm attaching what I think is my best evidence to <u>one</u> of the fraudulent collection fees and demonstrates what I mean by an accounting. The attached file contains documents that I received in or around May 2003 that include: forged consolidation and IRS consent papers; Statement of Purchased Account; and Federal Direct Consolidation Loan Verification Certificates. Through my own amateur forensic accounting, I can see that a $4599.32 collection fee was added but never removed by comparing the back-office Statement of Purchased Account next to the loan amount after the consolidation.

I do have a 2008 letter where the forgery was finally acknowledged by the Department of Education / DLSC that is not in this file but can be forwarded.

I feel strongly that there were earlier collection fees and interest inappropriately added but I've been unable to communicate with someone from the DOE who could help me. I'd gratefully speak with you to pinpoint the dates and agencies, to the best of my ability.

Regarding our communication from last year, I've attached our 2015 correspondence. In these letters you can see: 1) I was clearly under the impression that I was speaking with you; 2) I wrote about the forgery / fraud in my letter; and 3) I thought you were from the Department of Education after years of my attempting to contact the DOE.

Hopefully, I'll soon obtain pro bono representation. My other alternative is to find a consumer rights attorney on contingency as I believe that I not only have a strong case but there must be many others defrauded by this consolidation scam. This alternative is a last resort as I want this ordeal over and behind me.

Following is a small sample of what I've been put through: the DOE / DLSC had me prove the forgery by, among other requests, obtaining a police report from the locality where the forgery took place which had me contacting local police departments at cross country offices of Sallie Mae and other involved agencies… and I still don't know where the forgery took place as you can see in the attached file four different involved DOE servicing agencies — DLSC, USA Funds, NCO, and Sallie Mae in Georgia as well as Sallie Mae in Indiana. Five years of this and then, the DOE / DLSC not only didn't remove the fraudulent collection fee but reneged on their promise to forgive the loan. However, they did acknowledge the forgery and this is just one example of inappropriately added collection fees.

Again, this correspondence is in good faith.